exactly like this sketch or words to that effect. I seem to recall that from the testimony. I could stand corrected. My only question is, do you recall any such conversation or any such references?

THE WITNESS: No sir, it wasn't given to me in the interview or in the statement.

THE COURT: Anything further?

MR. SCHWEGLER: No, your Honor. Detective Giardina, please.

THE CLERK: Thank you. Please be seated. Please state your name for the record, spelling your last name.

J A M E S G I A R D I N A, being duly called and sworn as a witness on behalf of the People, took the stand and testified as follows:

THE CLERK: City, town or village in which you reside?

THE WITNESS: Amherst, New York.

THE CLERK: Thank you.

DIRECT EXAMINATION

BY MR. SCHWEGLER:

Q. Sir, you're a detective in the Buffalo Police Department Homicide Squad?

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

EXHIBIT 47 1/21/21

A. Yes sir.

Q. How long have you been working homicide?

A. Approximately four years.

Q. And how long have you been on the police force all told?

A. Approximately thirty years.

Q. Detective, let me direct your attention back to April 17th of 1998. Were you working with Detective Stambach, the gentleman who just testified here regarding an investigation or part of an investigation into the homicide of Paul Pope?

A. Yes sir.

Q. And on the 17th of April, 1998, in the early morning hours, did you and he interview a young black woman by the name of Wymeka Anderson, known as Pumpkin?

A. Yes, I did.

Q. Where did that occur, sir?

A. In the Homicide Bureau office interview room.

Q. I show you what's been marked as People's Hearing Exhibit 3. Can you identify that exhibit for us, please?

A. Yes, I can. It's the statement we took from Miss Anderson.

Q. That's a copy, correct?

A. It's a copy, yes.

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

                           Q. All right. How long were you in Miss Anderson's presence that morning, Detective?

A. A total of a couple hours at least. Two hours.

Q. And in the course of that contact with Miss Anderson, she obviously gave you a written statement, correct?

A. Yes.

Q. Okay. Did she make any statement whatsoever concerning any other homicide?

A. No.

Q. In particular, did she make any comment, even remote comment regarding the homicide of Tamika Means and the upcoming trial of Cory Epps for that murder?

A. No.

Q. You heard no such comment? Did any other detective make any comment to you that that woman, referring to Miss Anderson, just told us information about another case?

A. No.

Q. When you had completed your contact with Miss Anderson, what happened with her if you recall?

A. I don't recall. We took her back home as far as I can recall.

Q. Okay. Are you aware that Miss Anderson has made

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

a claim that she made certain statements in the Homicide Office relative to the homicide of Tamika Means?

A. Just recently.

Q. Did any statement occur that in your mind could be concerned with any other homicide at all made in your presence or told to you by another officer or any such thing in April of 1998?

A. No sir.

MR. SCHWEGLER: Nothing further. Thank you.

CROSS EXAMINATION

BY MR. COTTER:

Q. Detective Giardina, now you made no handwritten notes of the interview with Miss Anderson on April 17th, 1998, correct?

A. No, I did not.

Q. And you made no tape recording --

A. No.

Q. -- of the interview, correct?

A. No.

Q. And did you ever issue a P-73 or any other type of memorandum or report relative to your interview of her on April 17th, '98?

A. No, I did not.

Q. What was the next day that you saw Wymeka

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

Anderson after April 17th, 1998?

A. I don't recall seeing her at all.

Q. Now can you tell me approximately when it was you became aware that Wymeka Anderson was making statements relative to Russell Montgomery's murdering of Tamika Means?

A. Just when I first got called to come to a hearing.

Q. And do you recall when that was?

A. A few weeks ago.

Q. Prior to that few weeks ago, can I assume or am I correct in assuming that somebody from the District Attorney's Office contacted you?

A. I got a subpoena and I asked what it was regarding. I was told.

Q. And prior to a few weeks ago you had no knowledge at all of the connection or claimed connection between the cases of the People v. Russell Montgomery and People v. Cory Epps?

A. No.

Q. Now when you became aware that these -- that there was a claimed connection between the two cases, did you issue a P-73?

A. No, I did not.

Q. Now do you recall back -- I'm going to be turning

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

your attention back to April 17th of '98. Do you recall at what point you and Detective Stambach left the interview room?

A. Not exactly. Sometime after nine thirty when the statement was finished. I don't recall exactly what time it was.

Q. At any time during the statement, do you recall when you and Detective Stambach left the interview room?

A. During the statement, is that the question?

Q. During the statement.

A. No, I don't recall. I don't recall leaving at all.

Q. Now do you recall -- as you testify here today, do you remember what address Miss Anderson lived at in April of 1998?

A. No, just by this statement. 239 Dewey Street.

Q. Okay. Now --

THE COURT: Is that where she was returned following the statement?

THE WITNESS: I believe so, yes.

THE COURT: Were you at all involved in the investigation of Mr. Epps in the homicide of Tamika Means?

THE WITNESS: Other than taking the statement,

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

very little involvement.

THE COURT: What statement?

THE WITNESS: The statement from -- assisting Detective Stambach in the statement of Wymeka Anderson.

THE COURT: No, no. No, I'm asking whether or not you were in any way involved in the investigation and prosecution of Cory Epps --

THE WITNESS: Oh, no sir.

THE COURT: -- with respect to the alleged shooting death of Tamika Means on April 26th, 1997?

THE WITNESS: No sir, I was not.

THE COURT: So your involvement was solely in connection with the taking of this statement from Wymeka Anderson in connection with the prosecution ultimately of Russell Montgomery on the death of Paul Pope?

THE WITNESS: Yes.

THE COURT: And your activities did not at any time extend into the investigation of Mr. Epps for which he's been convicted dating back to the shooting death of Tamika Means on May 26th of '97?

THE WITNESS: Right.

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

(Whereupon, Defendant's Exhibit 8 was marked for identification.)

Q. Detective, I'm pretty sure I asked you but not positive. You don't remember when it was the next time you met or came across Wymeka Anderson --

A. Right.

Q. -- after 4/17, is that correct?

A. Right.

Q. Now I'm going to show you two pages of documents within a series and ask you if you recognize your signature on the second page.

A. Yes sir.

Q. Okay. And that was signed about August 30th, 2000?

A. Doesn't say when it was signed.

Q. It says sworn to before me. Beneath your signature, sir.

A. Okay. August 30th, 2000. Right.

Q. Okay. And this is an affidavit you submitted in respect to this case, correct?

A. Yes sir.

Q. That was ten months ago?

A. Approximately.

Q. More than a few weeks ago?

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

A. Right.

Q. Now if I could have it back, please. I believe you testified that you had no handwritten notes or any other notes?

A. That I can recall.

Q. That you can recall?

A. Right.

Q. All right. Prior to testifying here today, did you review the Russell Montgomery homicide file maintained by the Buffalo Police Department?

A. No, I did not.

Q. Did you look for any notes?

A. No.

Q. Do you ever make handwritten notes during the course of an interview?

A. Yes.

Q. Sometimes you do, sometimes you don't?

A. Most of the times I do.

Q. Most of the times you do?

A. Yes.

Q. Do you have a specific recollection that you did not do it in this case?

A. I don't recall. Detective Stambach, as far as I could recall, did the interview, I assisted him. He usually,

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

if he was doing the statement, he would have taken the statement, he would have taken the handwritten notes.

Q. He would have taken the handwritten notes?

A. Right, if there were any.

Q. Do you recall him taking handwritten notes?

A. No, I don't recall.

Q. What time did you go to 239 Dewey back on April 16th, 1998?

A. I don't recall the exact time. Sometime prior to the seven thirty a.m.

Q. On the 17th.

A. On the 17th?

Q. Sometime late at night?

A. No, earlier. Seven thirty a.m., the statement. Sometime prior to that as far as I can recall.

Q. On the 17th you took the statement at seven thirty in the morning?

A. Right.

Q. On the 16th, you're at Wymeka Anderson's house?

A. As far as I can recall. I really -- I recall picking her up, I just don't recall the exact time and --

Q. Now showing you again the portions of Defendant's 8, it's your 8/30/2000 affidavit. I direct your attention to paragraph six if I can.

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

A. Yes sir.

Q. Okay. You wrote there that if Anderson disclosed such information on April 17th, 2000 -- 1998, you would have written it down, correct?

A. Yes.

Q. Okay. What if she had told you on May 1st, '98, would you have written it down then?

A. I'm sure I would have.

Q. July 3rd, '98, would you have written it down then?

A. I'm sure I would have.

Q. Okay. Now, were you present with any other homicide detectives when Wymeka Anderson disclosed the fact that she had authored a letter that she had submitted to Mr. Epps' attorney?

A. No.

Q. You were not present?

A. No.

Q. Do you have any knowledge as to who was present?

A. No.

Q. Now do you recall who did the typing of Miss Anderson's statement?

A. Detective Stambach.

Q. You're positive?

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

A. I'm almost sure.

Q. All right. And is it fair to assume that the process by which the statement was taken was a series of questions asked by either you or Stambach?

A. Yes.

Q. And then typing would occur?

A. Right.

Q. And then another question would be asked?

A. Right.

Q. More typing?

A. Right.

Q. Now do you recall Ms. Anderson mentioning that Russell Montgomery looks like the Identi-sketch or Identi-kit that was used in the Tamika Means homicide?

A. No, I don't.

Q. Not at all?

A. No.

THE COURT: Did you know Russell Montgomery at the point when you were speaking to Miss Anderson? Was that somebody known to you?

THE WITNESS: No.

Q. At the time you took the statement from Miss Anderson back in April of '98, Russell Montgomery was a suspect in Paul Pope's killing, correct?

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

A. I don't recall. No, I don't recall knowing it at that time.

Q. Do you recall telling Miss Anderson that the information she had was just hearsay?

A. No.

Q. She ever tell you anything -- mention anything about Tamika Means?

A. No.

Q. Ever indicate to you that Russell Montgomery had killed someone other than Paul Pope?

A. No.

Q. Now ultimately at some point in time either on August of 2000 or May, 2001, you became aware that there was an alleged connection between the death of Tamika Means and the death of Paul Pope, is that fair to say?

A. That there was a -- yes, I would say so.

Q. When you became aware, did you issue any kind of P-73 or other memorandum?

A. No.

Q. Even though that would be your practice?

A. Right.

MR. SCHWEGLER: Objection, your Honor. That was not his testimony.

THE COURT: Well, I'll sustain. He's

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

indicated I think that sometimes they prepare the P-73s, sometimes their partner does, sometimes they do. I guess the bottom line, Officer Giardina, is, you did participate in the taking of the statement of Wymeka Anderson on or about the 17th. Both you and your partner deny that she -- that she at any time made any reference to any claimed knowledge by hearsay or otherwise of the murder of Tamika Means and who may have been responsible for it, correct?

THE WITNESS: Yes sir.

THE COURT: Did you testify or participate in the prosecution of Russell Montgomery?

THE WITNESS: No.

THE COURT: So other than taking this statement, did you engage in any other investigative activity that bore upon Russell Montgomery?

THE WITNESS: No sir.

THE COURT: So yours was the singular activity of the day, so to speak, of taking the statement from Tamika Means?

THE WITNESS: Yes sir.

THE COURT: Strike that, not Tamika Means.

THE WITNESS: I'm sorry.

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

THE COURT: But rather Wymeka Anderson.

THE WITNESS: Right. Yes sir.

BY MR. COTTER:

Q. Hang on a second, Detective. Isn't it true that three days after you took Wymeka Anderson's statement, you took a statement from Melvin Calhoun?

A. I assisted in other statements, yes.

Q. And Wymeka Anderson brought Melvin Calhoun down to the Buffalo police headquarters, correct?

A. I don't recall how that came about.

Q. Didn't you see Miss Anderson outside the Homicide Bureau on the third floor at 74 Franklin Street three days later?

A. I don't recall.

Q. But you remember taking the statement from Mr. Calhoun?

A. Yes. I know there was a statement taken from him.

Q. By you?

A. I assisted, yes.

MR. COTTER: Nothing further, Judge.

THE COURT: Anything further?

REDIRECT EXAMINATION

BY MR. SCHWEGLER:

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

Q. I just want to clear one thing up, your Honor. As far as -- I would ask you to take a look at Exhibit 3, and would you note for us the beginning and ending times of that statement?

A. Starting time was seven thirty a.m., and it ended at eight twenty a.m. on the 17th.

Q. All right.

A. 17th of 1998.

Q. If you stated that the statement ended at nine thirty a few moments ago, did you misspeak?

A. Yes.

MR. SCHWEGLER: That's all. Thank you.

THE COURT: Did you and Stambach go pick her up on Dewey, or was she at the Homicide Squad when you reported for duty?

THE WITNESS: As far as I can recall, we picked her up on Dewey.

THE COURT: As a prospective witness in connection with the investigation into the death of Paul Pope, right?

THE WITNESS: Yes.

THE COURT: And you were never -- I'll withdraw. Okay. I have nothing further.

MR. COTTER: Could I just --

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

THE COURT: Sure.

RECROSS EXAMINATION

BY MR. COTTER:

Q. To clear up on that point. Detective, I take you back to your August 30th, 2000 affidavit. I'm going to direct your attention to paragraph number two. Do you see where in there that you state that you went to 239 Dewey?

A. Yes.

Q. And you picked up Wymeka Anderson?

A. Yes.

Q. And you brought her down to the bureau?

A. Yes.

MR. COTTER: Okay. Judge, just for the record, what these are are the affidavits that were submitted in the People's second supplemental. I believe it was submitted to the Court on or about September 1st of 2000. Simply for the ease of use.

THE COURT: All right. Well, from what I can gather, there's not any basic contention in the various statements, either within the documentation or within the testimony. What I have so far is the two homicide detectives engaged in the interviewing of a witness on April 17th in which questions were asked relative to Miss Wymeka Anderson's knowledge

FORM CSR - LASER REPORTERS PAPER & MFG. CO 800-626-6313

of who, if anyone, killed Paul Pope, and both disclaim any reference, or any claim that she made mention of the homicide of Tamika Means. That's in contrast to Miss Anderson's testimony and I understand that. That's what we're here for is to resolving of that conflict. Anything further from Officer Giardina?

MR. SCHWEGLER: Not for the People, your Honor.

THE COURT: Okay. Thank you, sir.

THE WITNESS: Thanks.

MR. SCHWEGLER: Sergeant Costantino.

THE CLERK: Thank you. Please be seated. Please state your name for the record, spelling your last name.

A N T H O N Y C O S T A N T I N O, being duly called and sworn as a witness on behalf of the People, took the stand and testified as follows:

THE CLERK: City, town or village in which you reside?

THE WITNESS: Buffalo.

THE CLERK: Thank you.

DIRECT EXAMINATION

BY MR. SCHWEGLER:

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313