STATE OF NEW YORK
COUNTY COURT   :   COUNTY OF ERIE

_____

THE PEOPLE OF THE STATE OF NEW YORK,

                     Plaintiff,

    -vs-                                 INDICTMENT NO.
                                          97-1542-001

CORY L. EPPS,

                     Defendant.

_____

                    FRANK J. CLARK, ESQ.
                    Erie County District Attorney
                    BY: JOSEPH KILBRIDGE, ESQ.
                    Assistant District Attorney
                    Attorney for the People.

                    DAVID B. COTTER, ESQ.
                    5109 Main Street
                    Williamsville, New York 14221
                    Attorney for the Defendant.

## MEMORANDUM AND ORDER

### McCARTHY, J.

      Defendant moves to vacate the judgment of conviction entered against

him on June 10, 1998, upon a jury verdict of guilty of murder in the second

degree and criminal possession of a weapon in the second degree.   The

EPPS-DA 00297

-2-

conviction results from the homicide of Tamika Means on May 26, 1997 and is based upon the testimony of a single eyewitness, Jacqueline Bradley. Defendant was sentenced to an indeterminate term of incarceration of twenty-five years to life.

Defendant rests this motion on his claims of newly discovered evidence and the failure of the People to disclose certain exculpatory evidence (CPL § 440.10 [g] and [h]).  The newly discovered evidence claims are founded upon the affidavits of Wymiko  Anderson, sworn to on April 29, 2000, and Marcellus  Pierce sworn to November 6, 2000.

According to the Anderson affidavit, Russell Montgomery admitted the murder of Tamika  Means to Paul Pope who, in turn, told her what Montgomery had said.  These conversations are said to have occurred on May 26, 1997, the date of the Tamika Means homicide. On April 16, 1998 Paul Pope was murdered by Russell  Montgomery and on the day following, April 17, 1998, Ms.  Anderson states that she told unnamed Buffalo Police Homicide Detectives of Montgomery's admission to Pope.  She further alleges that she advised the police that a sketch prepared of the man who murdered Tamika Means was Russell  Montgomery.

EPPS-DA 00298

-3-

4/27/98

Her affidavit also recites that she is the author of an anonymous letter received by defendant's attorney following the jury verdict returned against defendant. Although this letter names Montgomery as the murderer of Tamika Means, it contains no reference to Montgomery's alleged admission to Pope; nor does it assert that the police had been informed by her that Montgomery committed this crime. Defendant relied upon this anonymous letter as the basis for a motion to vacate the verdict which was denied on June 10, 1998.

Defendant has also submitted the affidavit of Jacqueline Bradley. Her affidavit states that on April 20, 2000, six photographs and a drawing were displayed to her. One of the photographs was a picture of Russell Montgomery and the others were of the defendant. She states, without more, that she sees a "definite similarity" between Montgomery and Epps.

In response to the defendant's motion, the People's submissions include affidavits of the homicide officers who interviewed Wymiko Anderson on April 17, 1998 and these affidavits refute her allegations that Russell Montgomery was discussed in connection with the Means homicide.

-4-

Initially, defendant's contention that the judgment should be vacated on the grounds of newly discovered evidence provided by Wymiko Anderson is rejected. The claimed admission of Russell Montgomery to this murder is unequivocally hearsay in the circumstances presented and could not be received into evidence (see, People v Wallace, 706 NYS2d 539 [n.o.r.]). Additionally, defendant's papers fail to establish that Wymiko Anderson has any firsthand knowledge of the homicide of Tamika Means; and the affidavit of Jacqueline Bradley does not recant her testimony at trial (see, People v Nicholson, 269 AD2d 868). Since the alleged statement of Montgomery is inadmissible, no basis is presented to vacate the judgment pursuant to CPL § 440.10 (1) (g). (see, People v Nicholson, 238 AD2d 937, lv denied 90 NY2d 908).

Additionally, following defendant's initial submission of his papers on this application and while it was under consideration by the Court, defendant was afforded the opportunity to raise another basis in support of his motion to vacate this judgment on the ground of newly discovered evidence. Defendant's counsel has now submitted the affidavit of Marcellus Pierce. Pierce states that he was an inmate at the Erie County Holding Center from January 29, 2000

EPPS-DA 00300

to May 22, 2000 and that some time during late April or early May, 2000 he recognized a fellow inmate from the streets. He knew this inmate's jail name as "D" and now knows his name is Montgomery. He said to Montgomery "I heard that Cory wasn't the one that killed that girl, it was you." Montgomery asked "Who told you that?" and he said, "No one told me that directly." Montgomery then said, although he didn't know if he should be telling Pierce, "Yeah, I did it. I didn't mean to kill her. I was looking for her boyfriend." When Pierce said, apparently referring to defendant, that he's doing time, Montgomery replied, "I'm not going to turn myself in."

Accepting that Montgomery's statements were in fact made, their veracity is suspect for any number of reasons (see, People v Settles, 46 NY2d 154, 168) and thus, New York law conditions the admissibility of a declaration against penal interest such as that presented here upon: (1) the declarant's unavailability due to death, absence from the jurisdiction or refusal to testify on constitutional grounds; (2) the declarant's awareness when the statement was made that it was contrary to his penal interest; (3) the requirement that the declaration show that the declarant had competent knowledge of the underlying facts of the crime; and (4) the requirement that there by sufficient competent

EPPS-DA 00301

-6-

evidence independent of the declaration to assure its trustworthiness and reliability (<u>People v Brensic</u>, 70 NY2d 9, 15, mot to amend remittitur granted 70 NY2d 722; <u>see</u>, <u>People v Thomas</u>, 68 NY2d 194, 197 cert denied 480 US 948). The subject declaration fails to indicate any particular knowledge of the circumstances of the crime. Clearly it may not be concluded on the basis of this proffered declaration that Montgomery has demonstrated his familiarity with any of the facts of this crime. Additionally, the declaration is unaccompanied by any competent independent evidence which creates a reasonable possibility that Montgomery committed this crime. Accordingly, it is determined that the proffered declaration does not present a sufficient basis to vacate the judgment and grant a new trial on the ground of newly discovered evidence (<u>see</u>, <u>People v Wallace</u>, 270 AD2d 823).

As to defendant's contention that he was deprived of his due process rights under <u>Brady v Maryland</u>, (373 US 83), to discover favorable evidence in the People's possession which is material to guilt or punishment, the People assert that neither the prosecutor nor the police were aware of the favorable information, and that, in any event, it is insufficient to justify the relief sought. As noted above, however, the Anderson affidavit states that the

EPPS-DA 00302

-7-

information naming Montgomery as the person who killed Tamika Means was furnished to the police on April 17, 1998, a few days prior to the commencement of jury selection in this action and should have been disclosed in response to his request. Defendant argues that this information could have been used on cross-examination of the People's eyewitness had it been timely divulged; and that the failure to disclose deprived him of the opportunity to show a photograph of Montgomery to the eyewitness, and to make an informed decision concerning the trial strategy most beneficial to his interests (see, People v Smith, 127 AD2d 864; 866; People v Lumpkins, 141 Misc2d 581).

As indicated above, the People have submitted affidavits executed by the homicide detectives who interviewed Wymiko Anderson on April 17, 1998, and who obtained a signed statement from her on that date. These affidavits deny that she mentioned the murderer of Tamika Means, and her statement includes no reference to the homicide of Tamika Means.

The procedure to be followed upon a motion to vacate the judgment requires that after all the papers and documentary evidence or information of the parties is submitted, the court "must consider the same for purpose of ascertaining whether the motion is determinable without a hearing to resolve

-8-

questions of fact" (CPL § 440.30 [1]). Since the present motion presents directly conflicting factual allegations, it is determined that an evidentiary hearing is appropriate to resolve whether Anderson furnished <u>Brady</u> material to the police which was not disclosed to the defense prior to trial (<u>see</u>, <u>People</u> <u>v Baxley</u>, 84 NY2d 208). Pursuant to CPL § 440.30 (6) the defendant has the burden of establishing every fact essential to support the motion by a preponderance of the evidence.

This memorandum constitutes the order of the Court.


_____
JOSEPH P. McCARTHY, A/J.S.C.


DATED: Buffalo, New York

**GRANTED**
MAR 0 2 2001
COURT CLERK